Our next case this morning is number 232339, Stevenson v. Commerce. Yes, Ms. Lewis. May it please the court, Dionria Lewis on behalf of the appellant, Anastasia Stevenson. In this case, the Merit System Protection Board, rendered by Judge Sherry Zamora, which affirmed the agency-imposed penalty of Ms. Stevenson's removal from federal service should be set aside and reversed pursuant to 5 U.S.C. 7703 subsection c, because 1, it was not supported by substantial evidence, and 2, the findings in the board's decision demonstrated an abuse of discretion. Furthermore, the agency did not prove its case in whole or in part by a preponderance of the evidence. The penalty of Ms. Stevenson's removal was not reasonable under the circumstances, nor did it promote the efficiency of service. I understand your substantial evidence argument. Why was there an abuse of discretion? Yes, absolutely, Your Honor. And so in relation to the abuse of discretion, we have a litany, quite frankly, of reasons that we believe the board abuses discretion. So first and foremost... What's the best one? The best argument in terms of why the board abuses discretion is because Judge Zamora imputed essentially liability on Ms. Stevenson or a burden of proof on Ms. Stevenson to indicate that basically the absence of a negative, that she did not do something. I'm not sure I agree that that's a fair characterization of how things went down here. We hear this all the time in our patent cases, that they erroneously shifted the burden. But here, they clearly made a case. I mean, they didn't have cameras, so they didn't make 100 percent beyond a reasonable doubt case, but they came forward with evidence to then point out that your side didn't have any contrary evidence, which is, I think, what they were saying, or any inconsistent evidence is fair game. That's what an adjudicatory tribunal has to look at. So I don't see where the shifting of the burden thing gets you very far. Absolutely, Your Honor. And if I could elaborate on both of those questions and your response, Your Honor. So in this case, in addition to that argument, and while we understand Your Honor's point on that, outside of that, Ms. Stevenson also provided evidence of the fact in the record that Mr. Costello's testimony was actually not consistent. And so there was also a further abuse of discretion by weighing, essentially, Mr. Costello's testimony. Was not consistent with what? The record, Your Honor. And so specifically, Your Honor, I'm going to, if I can, point to the record for further guidance. So specifically, if we look at Appendix 132, that was related to Costello's original statement. We, in our written reply, assert the fact that originally, Mr. Costello's statement has changed. And this was something that did come out on the record. Your Honor, well, that's part of the other issue here. Ms. Stevenson was not actually given a copy of his original statement. And so there's a chain of custody issue here. You're saying that he contradicted himself. How did he contradict himself? Well, yes, Your Honor. I think what I'm saying is that there's a credibility issue, not necessarily that he contradicted himself. So related to what I'm pointing out in Appendix 132, he changed his statement, Your Honor. And so initially, yes, Your Honor. Initially, what he indicated was the basis for the proposed removal was a finding that there was agency official mail, including wage garnishments, including background investigations, so on and so forth. But the reality is, it wasn't until after Ms. Stevenson's written and or reply did they provide a supplemental declaration from Mr. Costello and Ms. Lewis, no relation, that now he is saying that there was junk mail found in these shredder bins. And so we're saying that there's a credibility issue and that there was an abuse of discretion because there is now new evidence that was not originally presented, but once Ms. Stevenson provided her version of the facts, because she's consistently been consistent about the facts. So the fact that there was junk mixed in, how does that go to the gravamen of the situation? And filing a reply based on his supplemental information, based on her reply, is kind of standard practice. Thank you for that question, Your Honor. And so we believe that that is relevant because Judge Zamora actually put a lot of weight to your question, Judge Goldberg, related to the fact that Ms. Stevenson in fact admitted to the fact that she discarded junk mail in one shred bin. And so Judge Zamora, in her position, in her findings, indicated that the fact that Ms. Stevenson did admit to providing or discarding junk mail in these advertisements in the shred bin, the fact that these advertisements and junk mail was also found, by the way, which was not said in the original statement from Mr. Costello, or evidence presented by Mr. Costello in the record when the original notice of proposed removal was offered, is now being used as a basis for Judge Zamora and the Board to draw a correlation between Ms. Stevenson's access and opportunity to throw away mail, all this mail, all 594 pieces of mail, that one, there was no established chain of custody for, as we've argued not only in our original brief and our reply, but the fact that they just pulled out mail out of three shredder bins. No one can actually identify which mail came from which shredder bin. And so the fact that these printer sheets, which supposedly have these end marks or benchmarks for dates allegedly, were also coupled with the junk mail that they're attributing to Ms. Stevenson admitting that she did throw away, somehow Judge Zamora has taken this whole scenario to mean that Ms. Stevenson did, in fact, participate in the alleged conduct as charged, which was to throw away this mail. So Your Honor, Judge Goldberg, back to your original question of how, well, we believe that's also another example of the abuse of discretion that is relevant here, and it is identified here in the record. The fact that Mr. Castillo also changed his statement, we believe is significant. And Judge Zamora did not really use that or look at that as a credibility issue. Did he say in his first statement there was nothing other than this junk to two mail in the bins? So that's the issue, Your Honor. In his first statement, he did not say anything about junk mail. He changed it. Right. Well, he didn't change it. If he didn't say anything about it, but he also didn't contradict himself, if his first statement was not that was the only mail there, there was no junk mail, there would be a contradiction if that's what he said in the first statement. Is that what he said in the first statement? Your Honor, he didn't use the word only, but he did indicate in his first statement that this was the mail that was found, and this was the mail that was thrown out of the bin. Well, because that was the mail that established the basis for the violation. He wouldn't, there was no need to talk about mail that was not a basis for the allegation, for the violation here. Right? Your Honor. So I guess I'm not seeing it as a contradiction. Absolutely, Your Honor. And we're not necessarily saying that it's a direct conflict as a contradiction, but we are saying that that should have weighed into Judge DeMora's analysis as it relates to Mr. Costello's credibility, as well as this whole chain of command and chain of custody issue related to, one, how the mail was in fact pulled out of the shredder bins. I mean, there's also an inconsistency in the record where their agency's own employees don't know if it was three shredder bins, one shredder bin. Ms. Stephenson has been consistent about the fact that she only used one shredder bin the entire time. Furthermore, in alignment with that same point, Judge DeMora did not consider the fact that there was access and opportunity for many other employees, including employee Joanne Fowler, who was previously, before Ms. Stephenson was provided this task, actually participating in the sorting and distribution of mail. Yet, Ms. Fowler was not a part of that original limited inquiry. Two other names that came up in this case, something with the G. Ms. Jamila Gassi. Yes. And one of them spent 15 minutes helping. Your client needed help, she asked for help, and she got some help. One of the help, at least one of those people only helped her for 15 minutes, that was not contradicted, right? No, Your Honor, that was not contradicted, but also, as it relates to Ms. Gaston's testimony, she also indicated that she never saw Ms. Stephenson throw away any mail either, and although- Well, she was there for 15 minutes of a process that took, how much, a couple days? A few days over the course of about three weeks or so. So, what she saw during the 15 minutes, unless, you know, the fact that she didn't see her doing anything doesn't tell you much, right? Well, respectfully, Your Honor, I mean, at this particular point in time, there was a return to work, right? And so, it wasn't just Ms. Stephenson that was coming into the office one time a week. Ms. Fowler was coming into the office and previously had been coming into the office prior to Ms. Stephenson coming into the office for this return to work, I guess, stage. But I thought Ms. Stephenson was called back to do this task, and she was assigned to oversee this task in its entirety, right? Correct, Your Honor. Ms. Stephenson was called back to work, and that's actually my point. Ms. Fowler and Ms. Gaston had already been coming into the office approximately one day a week or maybe two days a week to do various administrative tasks. Ms. Stephenson was then called back, and so going back to the point- To do the mail. Yes. To do the mail, yes.  And to your point, Your Honor, about- To do the mail, and it was established that some of that mail was shredded, right? No, Your Honor. There is actually nothing in the record that supports that any of the mail was shredded. It was just in the shredder bin. Well, it's about to be shredded. Well, Your Honor, that's another issue in this case. We don't actually have any information related to the frequency of when the shred bins are actually emptied. I mean- Why does that matter? If it's in a shredding bin, it has a sign that says, to be shredded, why does it matter? It absolutely matters, Your Honor, and we think that it is very compelling in this case because that evidence does not exist because if you actually go through, and Volume 2 of the appendix is primarily- Well, see, what they did is they looked at the layers in the shredder bin, and they found they identified a bottom layer and a top layer of material put in by other people, and she was in the office during the period between the date of the bottom layer and the top layer, right? Yes, Your Honor, and thank you for pointing that out. If I could just finish this last point because I think this will actually tie into the point that you just made. Volume 2 of the appendix actually has information in it that dates back all the way to 2019. I went through great lengths, quite frankly, to actually go through and reconcile the types of mail and documents here, and as a point to that, there are loose papers here. There's a section where it's just envelopes. There's a section where there's loose papers. We don't actually know if all of these were a part of the mail or if they actually were just papers that happened to be in a shred bin for the past year or two since, Your Honor, Judge Goldberg. We don't actually know when the shred bins have actually been emptied, so we don't really know if these end marks, Judge Dyke, were really real, quite frankly, and because, to your point, Your Honor, these papers weren't there. The reality is there were three bins that the agency admits it pulled information and documents and mail from. We don't have, because of the chain of custody issue, we don't have any way to actually determine, Your Honor, as you talk about the dates that Ms. Stevenson was in the office, if that came from the shredder bin that she actually put documents in or the junk mail in. At this point, it's a huge issue, we believe, for the agency, which is why we believe it also did not provide substantial evidence and the board should not have found substantial evidence. The point is, because there's no evidence as to the shredding schedule, certified envelopes that are important could have been purposely put in there by someone else. Exactly, Your Honor, and to the point of that, just the location of these shredder bins. They're in the hallway. It's a common access point for many people, and we also have to keep in mind that these shredder bins were alerted as being full on June 27th, 2022. Why is that significant? It's significant because it is five days after Ms. Stevenson completed the task, which she asserted to Mr. Costello in email. She also indicated on that same day that she walked down to the third floor to deliver to Ms. Lamarca a huge box of mail that she identified was for enterprise services. Because this mail, these shredder bins, so full that you could see from the entryway point of them what was the contents included, the point is that happened on the day that the entire department returned to work after being out of work for two years. During this time, Your Honor, and going back to the point about why it is important that we don't know the shredder schedule, there could have been plenty of documents in there, including mail, that not only was there for the past two years because of the COVID-19 pandemic that shut down all agency operations, but also we don't actually know, since they did compile these mailings from different shredder bins, if it actually comports with the bin that Ms. Stevenson actually used. Similar to that, and as a point of that same argument, Ms. Stevenson had always indicated that she used one shredder bin. She never denied using the shredder bin. She never indicated or tried to conceal the fact that she did throw away junk mail. And she was the only person with a motive to destroy the documents, right? Your Honor, we do believe that we've addressed that as well in our brief, but just to touch on that point, because I do see my time is winding down, we do believe that she was not the only person with motive, because on June 27, 2022, you had hundreds of people returning to work in the Human Resources Department who now have potentially mail all over their desks that they wanted to get rid of as well, because it was so outdated and old that they had no reason or use for it. And so because of this limited inquiry that took place, we believe that is also evidence that should have been considered, because only two people in this case were spoken to about the investigation. Can I just add a little excuse? If during COVID, when nobody was coming in, the mail was staying in the mail room, then you're suggesting people came in and there was tons of their mail already delivered to them in their workstation? No, Your Honor. And I see my time has expired, so do you mind if I just continue addressing your question? No, Your Honor, that's not what I was attempting to portray for the panel. What I was trying to say is that on the return date of work, June 27, 2022, the first part of that is multiple people could have been throwing away things in the shredder bin. And then the other thing that I'm saying is that because there was a shutdown of the government operations for approximately two years, we don't actually know, because we don't know how long the shred bin, how frequent the shred bins had actually been emptied, or if it was one shred bin versus another shred bin on a certain schedule. I asked you earlier about the layers in the shred bin, and I thought it was established by the top layer and the bottom layer, which they had dates for, that the material in the middle was material that was supposed to be sorted by your client. Your Honor, thank you for clarifying that, and unfortunately, we thought that that was clear in our brief, so we appreciate you raising that. No, it was actually not established. All we know, and I can tell you where in the appendix some of these printer sheets are found is appendix 215 to 218. These are print sheets. We have no clue, because of the chain of custody issue, which we believe is a major issue in this case, where these printer sheets came from. We don't know if they came from bin one, bin two, bin three, but what we do know is Ms. Stevenson acknowledged that she only used one bin. We'll call that, for purposes of answering your question, bin one. And so if Ms. Fowler put printer sheets in bin two or three, yet all of the bins were pulled into the office of OWR at once, by Ms. Fowler, and pulled all the contents at once, and because everything was organized by type, we have no reason or understanding. Okay, I take your point. I have one more quick question. Yes, Your Honor. I can answer yes or no. Is the board allowed to rely on circumstantial evidence? Yes, Your Honor. Thank you. Okay, I think we're out of time. Yes. We'll give you a minute for rebuttal. Thank you very much. Mr. Beckridge? Good morning, Your Honors. May it please the Court. The Court should affirm the decision of the MSPB because the decision is supported by substantial evidence in the record. Specifically, I want to focus on three pieces of uncontroverted evidence that support the MSPB's decision and show that Commerce proved the charge of conduct unbecoming a federal employee by preponderance of the evidence. In addition, I will discuss the reasonableness of the removal penalty. So turning first to the three pieces of evidence. The first piece of evidence is that Ms. Stevenson explicitly stated that she disposed of mail that included old advertisement mail like magazines, grad school mail, and those types of mail. Now to be sure, none of the 14 charges against her specifically cite the discarding of advertisements as the basis for the charge, but I think this evidence is still probative for two reasons. First, it shows that Ms. Stevenson was in fact discarding mail into at least one shred bin during the time in question. And she was the one in charge of sorting the mail and doing that job, right? That's correct. She was the one in charge of it, and as Your Honor pointed out, she was the only one assigned to the task other than 15 minutes that Ms. Gaston also worked on the assignment. Were these shred bins just located in the hallway so that everybody used them as essentially their own trash cans? I don't know that that's entirely clear from the record, but presumably they were in a copy room. I don't, you know, I think it's important to point out, though, that during the time in question, the agency had not yet returned to work, and so it would not be that everybody would be using them as their own personal trash can because there's a limited amount of people that were even coming to work. Well, your friend said something about after everybody had to come back that the times were overlapping. Is that not correct? Well, I think that the problem with that argument is the point that Judge Dyke made, is that we have a timeline here of when this mail was discarded. There's evidence based on the printer sheets that below the mail in question was a printer sheet dated May 16th and above the mail in question was a printer sheet dated June 21st. So that limits the time frame in which the mail could have been discarded. She also made the point several times about there was no chain of custody. Well, I mean, we're not in a criminal proceeding here, but whoever went in and looked at it, he asked someone from HR to come in and observe what he was doing, right? That's absolutely right. They certainly make an argument regarding chain of custody. The cases cited in their brief relate to chain of custody with respect to specimen testing, which have certain procedures that have to be followed. That's just plainly inapplicable here. I'm certainly unaware of any chain of custody procedures that were not followed that were required to be followed. In this case, as Your Honor points out, whenever the mail bins or the shred bins were emptied, there was another official from the department supervising to confirm what was found in those  Did both of those people testify? Did both of those people testify? I'm not sure if Ms. Lewis testified before the MSPB, but certainly her statements are in the record, and that can be found at page 141 of the appendix. Turning back to Ms. Stevenson's statements, again, I think what it shows is that she did throw away mail during the time in question, and I think it's particularly relevant because she had already pushed back against the notion that she should be performing the mail distribution project by herself. And at least part of her solution to that problem, we know from her own admission, was to discard mail. And the second reason I think it's relevant is that if advertisements were intermingled... Wait, I didn't get that last point. You're saying from her own admission, she discarded mail? She didn't admit just to discarding the mail that's in question? Correct. My point is that she admitted to discarding some portions of mail. Junk mail. Junk mail, correct. But without instruction to do so. And if this junk mail was intermingled with the mail at issue, then that's strong evidence that the mail at issue was being thrown away at the same time as the junk mail, which takes us to the second piece of evidence, which is Mr. Costella's testimony, in which he testified that the junk mail was found intermingled with the mail at issue in this case. And so that's important. Because this junk mail was intermingled with the mail at issue, that's certainly evidence that whoever threw away the junk mail also threw away the mail at issue. Now again, Ms. Stevenson tries to discount that evidence by arguing that Mr. Costella's testimony is not credible. But this court will only set aside a credibility determination if it's inherently improbable or discredited by undisputed fact. Simply put, Ms. Stevenson offers no factual basis to discredit Mr. Costella's testimony, and thus this court should accept, would the MSPB found that he credibly testified that junk mail was intermingled with the mail at issue. And the third piece of evidence, which we've now discussed, are the printer sheets confirming the timeline of when this mail was thrown away. And that timeline, it matches very closely with the timeline in which Ms. Stevenson claims to have been performing the mail distribution project. And so in sum, the evidence shows four things. One, that Ms. Stevenson was assigned to a project that she believed was too big for just one person, that while completing the project, she admits to discarding mail, that the very same type of mail that she admits to discarding was intermingled with the mail at issue in this case that she was charged with discarding, and that the mail was in all likelihood discarded at the same time that Ms. Stevenson was working on the project. Well, opposing counsel suggests that the people who received the mail on their desks might have been overwhelmed by the mail, and they might have been the ones to shred it. Is that consistent with the record? I thought that the shredding took place before the mail distribution to the other offices. Your Honor, there's certainly no evidence in the record that any other employee threw away their mail. I understand that, but I was asking about motive. At some point, she finishes the project. I forget what the date is. If she advises her supervisor, she's finished the project. Right. And she puts the mail in a box. Correct. What's the date of that? June 22nd is when she advises her. So that's after the shredding took place. After the mail was placed into the shredder. Or into the shred bin, excuse me. Yes, that's correct. So that's not consistent with the idea that the mail was distributed to other people, and then those people shredded it. That's correct, Your Honor. And so based on all the evidence we discussed, I'm not sure if another conclusion can be reached other than that Ms. Stevenson was responsible for the discarded mail. But at the very least, the board's decision is supported by substantial evidence. And the MSPB's determination with respect to the charge should be affirmed. I think you're right where my question is going to be, which is the sanction. Correct, Your Honor. What were the other possible sanctions other than the one that was imposed? Was it just removal and that's it? Were there other alternatives? So what the deciding official said is that due to the seriousness of the offense and the lack of trust that the agency had in Ms. Stevenson moving forward. I understand why they imposed the sanction of removal. I'm asking was there a lesser sanction available? Well, I think that's where I was getting.  Is that what the agency decided is that there was no lesser available sanction because they simply had no trust in her to be able to do her job moving forward. But in theory, just to be responsive to the question, you could suspend for 15 days, you can suspend for 30 days, you can demote, you can do all sorts of things. That's my question. Okay, my apologies, Your Honor. Certainly, yes. I think that the agency was not limited in its discretion to choose a penalty. The question now is in exercising that discretion, was the agency's actions totally unwarranted based on all of the factors? And certainly, we believe that they were not. Ms. Stevenson primarily makes two arguments with respect to the penalty. First is that the charge was not proved. And of course, we agree that if the charge is approved, then the penalty would likewise be improper. But as we've discussed in our briefing here today, we certainly believe that substantial evidence supports the finding that Commerce proved the charge by preponderance of the evidence. And so then the second argument that Ms. Stevenson makes is with respect to only one of the Douglas factors. And she maintains that she cannot show remorse for an act that she denies culpability for, and thus that factor should not have weighed against her. At the outset, the Board addressed this argument. The Board explained that when an appellate maintains that they have done nothing wrong, that reflects poorly on their ability or potential for rehabilitation. But I think maybe even more importantly, as the Board noted, the deciding official evaluated every Douglas factor in making her determination that removal was the proper penalty. The highly relevant ones, as I mentioned, are that the charge against Ms. Stevenson was serious, something that this court has said as well, that discarding Mel is a serious offense that can warrant removal, and that, again, the agency had lost trust in Ms. Stevenson to do her job. In light of the findings by Commerce, based on all of the factors, the Board correctly concluded that the penalty of removal was not totally unwarranted and thus fell within the agency's discretion in choosing a penalty. Her title for Commerce was Administrative Officer? That's correct. What does an Administrative Officer do for Commerce? The Administrative Officer, my understanding, helps with these administrative tasks so that her specific office, an HR office, is able to inform Commerce's employees of rights related to their job functions, which is why, again, this particular offense is problematic. There are, I mean, it's in the record, but the documents, the types of mail that were disposed of were significant. Background checks. Background checks, 104 pieces of mail concerning wage garnishments, 163 pieces of mail regarding unemployment claims. I'm certainly not diminishing the allegations, but I'm just wondering, in the scheme of importance of the jobs that she did, was sorting and discarding mail high on the priority list? And I guess it goes to the penalty post. I think so. I mean, certainly during the time in question, I think Mr. Costello made that clear that this is an important function and it needed to be completed so that the employees of the department, again, received their mail, received the things that may require responses. And so I certainly believe that that was an important function that she was performing. If the court has no further questions, we ask that the court affirm the decision of the MSPB. Okay, thank you.  Ms. Lewis, you have a minute here. Thank you, Your Honors. There's certainly so much I would like to address, so I'll try to do it as quickly as possible in the event that you all don't have any specific questions. So first and foremost, Your Honor, as it relates to the location of the agency's policy regarding disciplinary actions, that can be found at Appendix, specifically for this conduct, 251 in the Joint Appendix. And so to answer your question for the general misconduct, the written reprimand to remove, the scheme is written reprimand to removal. It could also be five days suspension to removal, 30 days suspension to removal. So there's certainly a progressive disciplinary option here. Also, just to remind everyone that the June 27, 2022 date is the date that everyone came back to the office. This isn't just some random date. And that's also the date that the bins being over flooded, if you will, was identified. They were not identified on June 23rd, June 24th, or any other day prior to June 27th. So presumably, because there were other people coming back into the office preparing for the return, they would have seen those bins if it was, in fact, overflowing due to Ms. Stephenson's own conduct and actions. Your Honor, I see this. Oh, I have eight more minutes. Okay, eight seconds. Okay, so we also believe that the penalty here is too severe, quite frankly. There is no evidence that shredding actually took place. The fact that Ms. Stephenson did admit to throwing away what she was consistent about, advertisements and junk mail, is not dispositive of the fact that she threw away 594 pieces of agency official documents. She's not even charged with throwing away junk mail. And so the fact that she's charged with doing something she didn't even admit to doing is also not dispositive of anything. And again, Your Honor, to the question that you asked about for clarification, the printer sheets were intermingled. It wasn't on top. It wasn't on bottom. Because of the chain of custody issue, we actually don't know where they were. We don't know what bin they were in. Okay, I think we're about out of time. Okay, thank you, Your Honor. Thank you.